UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

Nos. 93-2314
94-1015

ARTHUR H. LA PLANTE,

Plaintiff, Appellee,

v.

AMERICAN HONDA MOTOR CO., INC.,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before
Breyer,* Chief Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Andrew L. Frey, with whom Evan M. Tager, Adam C. Sloane, Mayer,

Brown & Platt, Gerald C. DeMaria, and Higgins, Cavanagh & Cooney were

on brief for defendants.
Mark B. Decof, with whom Vincent T. Cannon, Howard B. Klein,

Decof & Grimm were on brief for plaintiff.

Hildy Bowbeer, Lezlie Ott Marek, Darin D. Smith and Bowman and

Brooke on brief for Product Liability Advisory Council, amicus curiae.

June 29, 1994

*Chief Judge Stephen Breyer heard oral argument in this matter but did
not participate in the drafting or the issuance of the panel's
opinion. The remaining two panelists therefore issue this opinion
pursuant to 28 U.S.C. 46(d).

BOWNES, Senior Circuit Judge. Plaintiff-appellee
BOWNES, Senior Circuit Judge.

Arthur LaPlante was rendered quadriplegic from a fall

sustained while riding an all-terrain vehicle (ATV) designed,

manufactured, and distributed by defendants-appellants Honda

R&D Co., Ltd., Honda Motor Co., Ltd., and American Honda

Motor Co., Inc. (collectively "Honda"). A jury found Honda

liable and awarded plaintiff $9,652,000 in compensatory

damages. This amount was reduced to $8,204,200 to account

for plaintiff's comparative negligence. In a separate

proceeding, the district court granted judgment as a matter

of law for Honda on plaintiff's claim for punitive damages.

Honda appeals from the judgment of liability and compensatory

damages. Plaintiff cross-appeals on its punitive damages

claim.

Finding reversible error, we vacate the judgment of

liability and remand for a new trial as to all liability

issues. If Honda is found liable on retrial, the award of

damages stands. As for plaintiff's cross-appeal, the

judgment of the district court is affirmed.

I.

BACKGROUND

On Saturday, March 11, 1989, the course of Arthur

LaPlante's life was dramatically and irreversibly altered.

On that morning plaintiff, a twenty-four year-old army

mechanic stationed at Fort Carson, Colorado, and three

-2-
2

friends, Kelly Kallhoff, Randy Leib, and Mike Mohawk,

ventured to nearby Pikes Peak in order to ride Kallhoff's

three-wheel ATV, a 1982 Honda ATC200. This ATV is a three-

wheeled motorized vehicle intended for off-road use. The

vehicle has handlebar steering and large low-pressure tires,

two in the rear, and one in front.

Plaintiff, who had never before ridden an ATV, was

the third to ride after Kallhoff and Leib. After climbing to

the top of a knoll, plaintiff began to descend at a speed of

5-10 m.p.h. When plaintiff was unable to negotiate a left-

hand turn onto a twelve foot wide dirt road, he fell over a

steep embankment and broke his neck, resulting in permanent

paralysis from the neck down.

On January 11, 1991, plaintiff, who lived in Rhode

Island before enlisting in the Army in 1983 and returned

there after the accident, commenced this diversity action in

the United States District Court for the District of Rhode

Island. The complaint delineated six causes of action: (1)

breach of warranty; (2) false advertising; (3) negligent

failure to advise how to operate the vehicle; (4) negligent

failure to warn; (5) strict liability design defect; and (6)

willful, wanton and reckless conduct (i.e., punitive

damages). The trial was bifurcated so that the issue of

punitive damages could be tried after the issues of liability

and compensatory damages. The parties agree that the

-3-
3

substantive law of Rhode Island governs the liability issues

in this action.

A twenty-three day trial on liability and

compensatory damages began in July 1993. At the close of

plaintiff's case Honda moved for judgment as a matter of law.

Only the claims for negligent failure to warn and strict

liability design defect survived the motion. Ultimately the

jury found Honda liable on these two claims, and awarded

plaintiff $3,652,000 for medical expenses and lost wages, and

$6,000,000 for physical injuries and pain and suffering. The

jury also found that plaintiff was comparatively negligent,

and reduced his award by fifteen percent. The district court

denied Honda's motions for postjudgment relief.

The punitive damages phase of this action commenced

on September 16, 1993. On the same day, at the close of

plaintiff's evidence, the district court granted Honda's

motion for judgment as a matter of law. These cross-appeals

ensued.

II.

DISCUSSION

A. Rhode Island's Subsequent Alteration Statute

Honda argues that the district court committed

reversible error by not instructing the jury on the

affirmative defense provided by Rhode Island's "subsequent

alteration" statute, R.I. Gen. Laws 9-1-32 (1985).

-4-
4

Rhode Island law provides that "[n]o manufacturer

or seller of a product shall be liable for product liability

damages where a substantial cause of the injury, death, or

damage was a subsequent alteration or modification." R.I.

Gen. Laws 9-1-32(b) (emphasis added). The statute defines

"subsequent alteration or modification" as

an alteration or modification of a
product made subsequent to the
manufacture or sale by the manufacturer
or seller which altered, modified, or
changed the purpose, use, function,
design, or manner of use of the product
from that originally designed, tested or
intended by the manufacturer, or the
purpose, use, function, design, or manner
of use or intended use for which such
product was originally designed, tested
or manufactured.

Id. 9-1-32(a)(2). Honda contends that it presented

evidence that the ATV ridden by plaintiff was altered or

modified after its original sale, and therefore the trial

court's failure to instruct the jury in accordance with 9-

1-32 was reversible error. In support of its position Honda

points to evidence that, at the time of the accident, the

ATV's front brakes were inoperable, its rear brakes were

faulty, its right rear tire was overinflated, its front forks

were bent, and it pulled to the right.

Plaintiff's response is fourfold. First, he

maintains that "lax maintenance" cannot constitute a

"subsequent alteration or modification" under the statute.

Rather, plaintiff insists that 9-1-32 was intended to

-5-
5

"provide a defense when someone has deliberately altered a

machine. . . ." Next, he argues that the statute merely

codified comment g of Section 402A of the Restatement

(Second) of Torts. Third, plaintiff contends that the jury

charge adequately apprised the jurors of Rhode Island law.

Finally, he argues that any error was harmless because Honda

failed to present sufficient evidence that any of the alleged

subsequent alterations was a substantial cause of plaintiff's

injuries.

With respect to the scope of the statute, we have

been unable to find any support for plaintiff's contention

that the scope of 9-1-32 is limited to deliberate

alterations, such as the removal of safety guards, and does

not reach "alterations" or "modifications" that have resulted

from inadequate maintenance. It is well settled under Rhode

Island law that "[i]n the event that a statute is

unambiguous, it is necessary for this court to apply its

terms literally." Keenan v. Vose, 634 A.2d 866, 868 (R.I.

1993); see also Costello v. American Univ. Ins. Co., 633 A.2d

260 (R.I. 1993) (where statute "has a plain and unambiguous

meaning . . . this court is bound to construe the statute in

accordance with that meaning"); Levesque v. Rhode Island

Dep't of Transp., 626 A.2d 1286, 1289 (R.I. 1993) (when

statute is clear and unambiguous on its face courts "must

give the words of the statute their plain and obvious

-6-
6

meaning"). Here, plaintiff's proposed limitation directly

contradicts the unambiguous and broad language of the

statute. No exception has been drawn by the Rhode Island

legislature for alterations resulting from inadequate

maintenance as opposed to deliberate changes, and we can find

no principled reason for reading such an exception into the

statute.

Several states have enacted comparable statutes

that specifically include "failure to observe routine

maintenance" within the meaning of subsequent alteration or

modification. See, e.g., Ky. Rev. Stat. Ann. 411.320(1)

("product alteration or modification shall include failure to

observe routine care and maintenance, but shall not include

ordinary wear and tear"); N.C. Gen Stat. 99B-3 (same); see

also Lamb By Shepard v. Sears, Roebuck & Co., 1 F.3d 1184,

1188 (11th Cir. 1993) (under Georgia, law failure to observe

routine care and maintenance can constitute a material

alteration or modification insulating defendant from

liability for defective design). We have failed, however, to

uncover a single statute that excludes inadequate maintenance

from the category of subsequent alteration or modification

for purposes of this defense. Finally, given the apparent

purpose of 9-1-32, i.e., to protect manufacturers from

unanticipated risks created by alterations or modifications

occurring after a product leaves their control, we can see no

-7-
7

reason why the Rhode Island legislature would provide a

defendant with a complete defense where an ATV owner

disconnected his front brakes, but not where the front brakes

were inoperative due to the owner's failure to perform

routine maintenance.

Next, plaintiff argues that 9-1-32 merely

codifies the essence of comment g to Section 402A of the

Restatement (Second) of Torts which provides, in pertinent

part, that "[t]he seller is not liable when he delivers the

product in a safe condition, and subsequent mishandling or

other causes make it harmful by the time it is consumed."

Plaintiff points to no language in 9-1-32 to support this

argument. Rather, plaintiff relies solely upon the presence

of 9-1-32 in two string citations, i.e., Model Uniform

Product Liability Act 112(D), analysis (1979) (citing 9-

1-32 among statutes that have "enacted the essence of . . .

comment [g] into law"); Robinson v. Reed-Prentice Div., 403

N.E.2d 440, 443 (N.Y. 1980) (citing 9-1-32 for proposition

that "[s]ubsequent modifications of a product from its

original condition by a third party which render a safe

product defective are not the responsibility of the

manufacturer"), as support for this statutory interpretation.

The plain meaning of 9-1-32 simply does not

support the proposition for which it is cited by either of

the above sources. Neither authority explains the inclusion

-8-
8

of 9-1-32 in its respective string citation, nor does the

text of the statute bear even a modest resemblance to comment

g of the Restatement. The statute means what it says and

must be applied. Plaintiff's attempt to limit the statute's

breadth by relying on these two citations is unavailing.

The next question is whether the jury charge was

deficient. We examine jury instructions with an eye towards

determining if "they adequately explained the law or `whether

they tended to confuse or mislead the jury on controlling

issues.'" Davet v. Maccarone, 973 F.2d 22, 26 (1st Cir.

1992) (quoting Brown v. Trustees of Boston Univ., 891 F.2d

337, 353 (1st Cir. 1989), cert. denied, 496 U.S. (1990)).

The judge's instructions on strict liability were that the

plaintiff must prove, inter alia, that the product was

defective, and "that the defect existed at the time the

product left the Defendant's hands." In elaborating on the

latter point, the judge stated:

The manufacturer or seller is not
responsible for defects resulting from
changes made to its product by other
persons over whom it had no control after
the product left the Defendant's
possession.
Therefore, in order for the
Plaintiff to prevail on his strict
liability claim, the Plaintiff must prove
that the defect that caused his injuries
existed at the time the product left the
Defendant's control. That does not
necessarily mean that the product must
have been in exactly the same condition
at the time of the injury that it was
when it left the Defendant's control.

-9-
9

What it does mean is that the particular
defect for which the Plaintiff seeks to
hold the manufacturer responsible, must
have existed at the time the product left
the Defendant's control.

Trial Transcript of August 19, 1993 at 12-13. The judge then

instructed the jury that the plaintiff was required to prove

that the defect proximately caused his injuries:

That does not mean that a defect must be
the only or the last cause of an injury
in order to be considered a proximate
cause. It may be considered a proximate
cause if it operates together with some
other contemporaneous cause to produce
the injury. In such cases, both causes
may be considered proximate causes. If
the two of them act together to produce
the injury, you could have two proximate
causes.
[A] defect must be, at least, a
substantial contributing factor in
producing the injury in order for it to
be considered a proximate cause of that
injury. In other words, there must be a
reasonable connection between the defect
and the injury that is being claimed.

Id. at 14.

Although consistent with the prevailing common law

rule governing strict liability design defect actions in

Rhode Island, see Ritter v. Narragansett Elec. Co., 283 A.2d

255, 262-63 (R.I. 1971), the judge's instructions directly

contradict 9-1-32. Under the statute, where a subsequent

alteration or modification to a product is a "substantial

cause" of a plaintiff's injuries, the defendant is completely

immune from a products liability claim even if the product

was defective at the time it left the defendant's control,

-10-
10

and the defect was a proximate cause of the plaintiff's

injuries. Despite the evidence in this case that changes had

been made to the ATV between the time of its initial sale and

the time of plaintiff's accident, this defense was not

communicated to the jury. Under the circumstances, the

district court erred in refusing to give Honda's proposed

instructions.1

There is one additional step to our analysis. As

plaintiff correctly points out, a finding of error does not

1. Honda timely objected to the district court's refusal to
give several of its proposed jury instructions:

[1] [T]he Honda defendants shall not be
held liable for product liability damages
where a substantial cause of the accident
was a subsequent alteration or
modification of the all terrain vehicle.

[2] [F]ailure to properly maintain the
braking system, steering system and other
safety related items can constitute
alteration or modification of the all
terrain vehicle.

[3] [I]f you find that certain safety
related items on the all terrain vehicle
were improperly maintained and this
improper maintenance created a danger
that was a substantial cause of Mr.
LaPlante's injuries . . . then you must
find the Honda defendants are not liable
for plaintiff's injuries.

Appellants' Second Supplemental Jury Instructions at 1-2.
Plaintiff argues that the above request was defective because
Honda did not label it as an affirmative defense. Assuming
plaintiff is correct, the judge still had a duty to submit
the statutory defense to the jury. See Jerlyn Yacht Sales v.

Roman Yacht Brokerage, 950 F.2d 60, 69 n.16 (1st Cir. 1991).

-11-
11

necessarily warrant reversal. An instructional error

requires reversal only where the error is determined to be

prejudicial based on a whole-record review. Davet, 973 F.2d

at 26; Shane v. Shane, 891 F.2d 976, 987 (1st Cir. 1989). An

error is prejudicial if it could have affected the result of

the jury's deliberations. Allen v. Chance Mfg. Co., 873 F.2d

465, 469 (1st Cir. 1989). At trial Honda adduced ample

evidence that the ATV ridden by plaintiff was in poor

condition on the day of the accident. Most significant is

the undisputed fact that the ATV's front brakes did not work.

In addition, the evidence was sufficient for the jury to have

found that, at the time of the accident, the ATV had bent

front forks, severely maladjusted rear brakes, unequally

inflated rear tires, and pulled to the right.2

A rational jury, presented with Honda's subsequent

alteration defense, could have found that any or all of the

alleged alterations or modifications "substantially caused"

plaintiff's injuries. Consequently, the court's

instructional error could have changed the outcome of the

trial. Honda was not only entitled to have the jury

2. To underscore the poor condition of the ATV, Sergeant
James Shirley, its owner prior to Kallhoff, testified that he
paid only $25 for the ATV. Trial Transcript of August 2,
1993, Morning Session at 49. In addition, Shirley testified
that he did not make any significant repairs to the vehicle,
and that the vehicle's condition appeared unchanged when he
saw it one week prior to the accident. Id. at 53, 56.

-12-
12

instructed on this defense, but it is evident that the

court's failure to give the instruction was reversible error.

Plaintiff raises one additional argument that

warrants brief discussion. He maintains that the district

court's failure to give a subsequent alteration charge, even

if reversible error, has no bearing on the negligent failure

to warn claim. This argument fails for two reasons. First,

9-1-32 expressly covers failure to warn claims as well as

design defect claims. R.I. Gen. Laws 9-1-32(a)(1)

("product liability damages" includes damages for personal

injuries sustained by reason of an alleged defect in a

product or an alleged failure to warn against a danger).

Second, the case cited by plaintiff as support for this

proposition, Witthauer v. Burkhart Roentgen, Inc., 467 N.W.2d

439 (N.D. 1991), is clearly distinguishable. In Witthauer

the court held that a North Dakota statute similar to 9-1-

32 did not provide manufacturers with a defense to claims of

negligent failure to warn consumers of dangers caused by

foreseeable alterations or modifications to a product. Here,

plaintiff's claim is that Honda failed to warn him of dangers

caused by the ATV's original design defect, not by a

foreseeable modification or alteration. Accordingly,

Witthauer is inapposite. We have considered plaintiff's

other arguments anent 9-1-32 and find them to be without

merit.

-13-
13

B. Scope of Retrial

This leaves us with the question of which issues

should be retried. It is well settled that "[a]n appellate

court has broad discretion to remand for a new trial on all,

or only some, of the issues in the case." Dopp v. HTP Corp.,

947 F.2d 506, 518 (1st Cir. 1991) (collecting cases); see

also Fed. R. Civ. P. 59(a) (permitting a new trial on "all or

part of the issues"). A new trial may not, however, be

limited to fewer than all the issues unless it clearly

appears that the issues to be retried are so distinct and

separable from the other issues that a trial of those issues

alone may be had without injustice. See Gasoline Products

Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931);

Kassel v. Gannett Co., 875 F.2d 935, 953 (1st Cir. 1989).

All of the issues pertaining to liability must be

retried, including comparative negligence. On balance, we do

not think that a new trial limited to Honda's liability, but

excluding the extent of its liability, would be fair.

Moreover, comparative negligence is regarded as a liability

concept. See Winn v. Lafayette Town House, 839 F.2d 835, 837

(1st Cir. 1988); Akermanis v. Sea-Land Serv., Inc., 688 F.2d

898, 906-07 (2d Cir. 1982), cert. denied, 461 U.S. 927

(1983), and cert. denied, 464 U.S. 1039 (1984).

-14-
14

There is no basis on the record, however, for

retrying the jury's damage award.3 The liability issues in

this case are so distinct and separable from the damages

issue that a partial trial of the former may be had without

injustice. See Allen, 873 F.2d at 473-74 (new trial on

liability only where error did not affect determination of

damages); Winn, 839 F.2d at 837 (retrial on liability only

where damages properly determined); see generally 11 Charles

A. Wright & Arthur R. Miller, Federal Practice and Procedure

2814 at 95 (1973) (there may be a new trial on liability

with the prior determination of damages allowed to stand).

This is particularly true here because the trial judge

submitted detailed interrogatories to the jury, and thus we

know the jury's total damage award to the plaintiff, as well

as the amount discounted due to comparative negligence. If

the comparative negligence figures are changed as a result of

the new trial, the total damage award can be adjusted

accordingly.

Because we vacate and remand for a new trial on

both the strict liability and negligence claims, as well as

comparative negligence, it is unnecessary for us to address

Honda's remaining arguments regarding these matters. But in

3. Honda does not argue that the amount of the jury's
unadjusted damage award, $9.6 million, or any component of
that award, is excessive or shocking.

-15-
15

order to expedite the retrial, we have considered one such

argument.

C. Evidence of Honda's Profits from ATV Sales

Plaintiff's counsel was permitted, over Honda's

objection, to read the following interrogatory and answer to

the jury in connection with his negligent failure to warn

claim:

Q. Please state the total gross
revenues, profits and net income from the
sale of the all-terrain vehicles for the
years 1970 through 1989 in each and every
country where ATVs are or were offered
for sale to the public. Please respond
separately for each listed entity, Honda
Motor Company, Inc., American Honda Motor
Company, Inc., Honda R&D Company,
Limited.

A. [I]n 1987 it was calculated for the
period January 21, 1979 to June 25, 1985,
gross receipts for ATVs approximated
$1,722,881,000. Although American Honda
does not keep records of net profit by
ATV product line it allocated expenses
pursuant to reasonable accounting
principles to obtain a sum comparable to
pre-tax net profits in the approximate
sum of $73,371,000.

Honda argues that the evidence of its profits from ATV sales

was irrelevant and therefore inadmissible. Assuming the

evidence was relevant, Honda argues that its probative value

was substantially outweighed by its prejudicial effect.

"Evidence is relevant if it has any tendency to

make the existence of any fact consequential to the

determination of the action more or less probable." United

-16-
16

States v. St. Michael's Credit Union, 880 F.2d 579, 600 (1st

Cir. 1989) (internal quotation marks and citation omitted);

see also Fed. R. Evid. 401. After plaintiff's counsel read

the interrogatory and answer, the trial judge explained to

the jury that

[t]he evidence [of Honda's profits] is
being presented only to assist you in
determining what Honda may have known or
not known about the particular vehicle
that's the subject of this case. In
other words, it's to assist you in
understanding or reaching conclusions as
to what Honda may have known or believed
about the ATC 200 or why it acted as it
did and so forth. . . . [Y]ou're not
being asked to be Robin Hoods here and
take money from Honda simply because they
may have made money on the sale of this
vehicle. The only purpose of this
evidence is, as I said, to assist you in
reaching whatever conclusions you think
are warranted about whether the vehicle
as used had means to be dangerous or what
Honda may have known about the vehicle or
what it might have believed about the
safety of the vehicle.

Near the end of the trial the court commented that the

records of Honda's ATV profits "seemed to be probative of

the, shall we say, the credibility of the explanation by

Honda; and the Court gave a limit[ing] instruction to the

jury at that time."

The first question is whether the challenged

evidence was relevant to plaintiff's negligent failure to

warn claim. In Rhode Island, a defendant has a duty to warn

if he knew or should have known about the product's dangerous

-17-
17

propensities which caused plaintiff's injuries. Thomas v.

Amway Corp., 488 A.2d 716, 722 (R.I. 1985); Scittarelli v.

Providence Gas Co., 415 A.2d 1040, 1043 (R.I. 1980). Failure

to properly perform this duty as a reasonably prudent

manufacturer would have under the same or similar

circumstances, constitutes actionable negligence.

Scittarelli, 415 A.2d at 1043.

A defendant's motive for its action or inaction is,

generally speaking, immaterial to the question of whether the

defendant acted negligently. See Kunz v. Utah Power & Light

Co., 913 F.2d 599, 605 (9th Cir. 1990). This is because the

negligence inquiry measures behavior against an objective

standard, without reference to the defendant's state of mind.

See Sparks v. Gilley Trucking Co., 992 F.2d 50, 52 (4th Cir.

1993); Jones v. Wittenberg Univ., 534 F.2d 1203, 1211 (6th

Cir. 1976); see generally W. Page Keeton, Prosser and Keeton

on Torts, 31 at 169-70 (5th ed. 1984). Here, however,

whether or not Honda had a duty to warn plaintiff of the

ATV's dangerous propensities depended upon its subjective

knowledge of those dangers. Consequently, the evidence of

Honda's profits from ATV sales was, as we demonstrate in the

ensuing paragraph, relevant to plaintiff's negligent failure

to warn claim.

With respect to his negligence claim plaintiff

alleged that, prior to his accident, Honda knew that its ATVs

-18-
18

would "plow" (i.e., continue in a straight line even when the

handlebars are turned) under normal riding conditions unless

the rider shifted his or her weight in a counterintuitive

manner. Honda denied that it had any knowledge of this

danger. Honda's profits from ATV sales was introduced as

evidence that Honda's failure to provide adequate warnings

about plowing resulted from greed, not from lack of

knowledge. Therefore, proof of profits as evidence of

motive, while not material to any element of the failure to

warn claim, was probative of an issue relevant to the case:

the credibility of Honda's explanation for its inaction.

Generally speaking, "[a]ll relevant evidence is

admissible." Fed. R. Evid. 402. Under Rule 403, however,

relevant evidence may be excluded if the probative value of

the evidence "is substantially outweighed by the danger of

unfair prejudice" to the party against whom it is offered.

Fed. R. Evid. 403; see also Raymond v. Raymond, 938 F.2d

1518, 1523-24 (1st Cir. 1991); St. Michael's Credit Union,

880 F.2d at 601. Although the evidence of Honda's profits

from ATV sales was of some probative value, we believe the

danger that this evidence would unfairly prejudice the jury

was overwhelming.

The evidence was, at best, marginally relevant and

of scant probative value to plaintiff's failure to warn

claim. On the other hand, the risk that the jury would be

-19-
19

prejudiced by this reference to the enormous profitability of

Honda's ATVs was almost inescapable. The potentially

prejudicial nature of this "motive" evidence in the liability

phase of the trial was one of the factors that prompted the

district court to try the issue of punitive damages

separately. While the court did give a limiting instruction

to the jury warning against equalizing wealth between rich

and poor, it did not alert the jury to the impropriety of

punishing Honda for an unsavory motive. The inadequacy of

the limiting instruction coupled with the highly attenuated

relevance of the evidence leads us to believe that the

district court miscalibrated its Rule 403 scales.

Honda argues that the admission of this evidence

was reversible error, as it skewed the jury's allocation of

fault, and infected its liability determinations. Because we

have already ordered a new trial on both of these matters, we

need not decide whether the district court's error in

admitting the evidence of Honda's profits from ATV sales

warrants a new trial. Nevertheless, we hold that this

material should not be admitted on retrial. In addition, any

references to that information, such as the one made by

plaintiff at closing argument, should not be allowed.4

4. The following remarks were made, albeit without
objection, during plaintiff's summation:

Well, I told you at the beginning of
this case that the very disturbing, . . .

-20-
20

On appeal Honda has raised two arguments relating

to the damages award that should be addressed at this time.

D. Choice-of-Law

Honda argues that the district court's decision to

apply Rhode Island, rather than Colorado law, to the issue of

compensatory damages was erroneous.5 We disagree.

one of the most disturbing aspects of
this case is something that I believed
throughout my work on this case. . . .
Honda's actions or more truthfully their
inactions in this case were motivated by
greed. They were motivated by greed.

Do you remember when I stood before
you on the last day of Plaintiff's case
and I read to you that interrogatory
answer concerning the amount of money
that Honda made in a six-year period from
1979 to 1985 from ATVs, and I stood here
and I read it, and you may have been able
to notice, I almost became overwhelmed
with emotion when I was reading that
because it sunk into me at that point
what really was the reason Honda didn't
do anything to warn people about this
machine. It was money. It was a
business decision. They were making just
between 1979 and 1985 $1.7 billion
selling these machines in this country. .
. . I submit to you that Arthur
LaPlante's accident would not have
happened if this company had thought
about people before money. Had they
thought about people before money.

5. The difference between the two is substantial. While
neither state limits a plaintiff's recovery of "economic"
damages, or damages for physical impairment and
disfigurement, Colorado sets a $250,000 cap on damages for
"noneconomic loss or injury," (i.e., pain and suffering),

Colo. Rev. Stat. 13-21-102.5 (1987 & 1993 Supp.). Rhode
Island has no such limit.

-21-
21

At the outset, we reject plaintiff's contention

that Honda failed to preserve the choice-of-law issue. This

matter was timely and squarely presented to the district

court prior to trial, and was decided in plaintiff's favor.

Honda was under no obligation to renew its motion later in

the proceedings. See Union Mut. Life Ins. Co. v. Chrysler

Corp., 793 F.2d 1, 17 (1st Cir. 1986) (no waiver where

choice-of-law matter was "brought with sufficient clarity to

the [district] court's attention"); see also Jaurequi v. John

Deere Co., 986 F.2d 170, 173 (7th Cir. 1993) (to preserve

choice-of-law issue for appeal party only needs to timely

notify court of the applicability of another state's law).

A federal court sitting in diversity must apply the

conflict of law rules of the state in which it sits. Klaxon

Co. v. Stentor Elec. Manuf. Co., 313 U.S. 487 (1941); Crellin

Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st

Cir. 1994). Therefore we turn our attention to Rhode

Island's choice-of-law principles.

In resolving conflict of law disputes arising out

of tort actions, Rhode Island employs an interest-weighing

approach. Blais v. Aetna Cas. & Sur. Co., 526 A.2d 854, 856

(R.I. 1987); Pardey v. Boulevard Billiard Club, 518 A.2d

1349, 1351 (R.I. 1986); Woodward v. Stewart, 243 A.2d 917,

923 (R.I.), cert. dismissed, 393 U.S. 957 (1968). Under this

approach various interests are weighed in order to decide

-22-
22

which jurisdiction has the most significant relationship with

reference to a particular substantive issue. Pardy, 518 A.2d

at 1351; Woodward, 423 A.2d at 923. The first set of factors

to be taken into account are (1) the place where the injury

occurred; (2) the place where the conduct causing the injury

occurred; (3) the place that the parties call home (e.g.,

their domicile, residence, place of incorporation, or place

of business); and (4) the place where the relationship, if

any, between the parties is centered. See Brown v. Church of

the Holy Name, 252 A.2d 176, 179 (R.I. 1969); Putnam

Resources v. Pateman, 958 F.2d 448, 464 (1st Cir. 1992).

The resolution of choice-of-law problems may not

always turn on the number of contacts, but rather, the

qualitative nature of those contacts affected by the

following factors: (1) predictability of results; (2)

maintenance of interstate order; (3) simplification of the

judicial task; (4) advancement of the forum's governmental

interest; and (5) application of the better rule of law. See

Brown, 252 A.2d at 178; Blais, 526 A.2d at 856.

Our review of the district court's ruling is

plenary. Pateman Resources, 958 F.2d at 464; Quaker State

Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1515

(1st Cir. 1989). In the present case, Honda wants Colorado

and not Rhode Island law to apply to the measure of

compensatory damages available to plaintiff, but not to the

-23-
23

substantive rules of liability governing plaintiff's claims.

There is no reason that this cannot be done. Under the

doctrine of depecage, different substantive issues in a tort

case may be resolved under the laws of different states where

the choices influencing decisions differ. See Pateman, 958

F.2d at 465; Ashland Oil, Inc. v. Miller Oil Purchasing Co.,

678 F.2d 1293, 1304 (5th Cir. 1982) (laws of different states

may apply to issues of liability and damages in one action).

It follows that, in conducting our choice-of-law analysis, we

must consider the states' interests regarding the distinct

issue of compensatory damages, and not their interests

generally. Rhode Island ascribes to the principles of

depecage in tort cases. Pateman Resources, 958 F.2d at 465.

Regarding the number of contacts, we can discern no

material difference between Rhode Island and Colorado.

Although the injury occurred in Colorado, none of the

defendants are domiciliaries of Colorado.6 Furthermore, the

tortious conduct allegedly giving rise to plaintiff's

injuries occurred in Japan, where the subject ATV was

designed and its warnings devised. See Price v. Litton Sys.,

Inc., 784 F.2d 600, 604 (5th Cir. 1986) (conduct occurred at

place of design in design defect case). Finally, there being

6. American Honda is a California corporation with its
principal place of business in that state. Honda Motor Co.
and Honda R&D Co. are both Japanese corporations and have
their principal place of business in that country.

-24-
24

no "relationship" between the parties in the ordinary sense

of the word, this factor is unhelpful in making a choice-of-

law determination. See Allison v. ITE Imperial Corp., 928

F.2d 137, 142 & n.5 (5th Cir. 1991) (this factor is not

helpful in products liability cases where there was no

preexisting relationship between the parties); see also

Restatement (Second) of Conflict of Laws 145 (factor in

choice-of-law analysis is place where the relationship, "if

any", of the parties is centered). Consequently, Colorado,

as the place of injury, has a single material contact with

the present action.

Rhode Island too has one contact with this

litigation because, at the time of the accident, plaintiff

was a domiciliary of Rhode Island. See Restatement (Second)

of Conflict of Laws 17 ("A person does not usually acquire

a domicil of choice by his presence in a place under physical

or legal compulsion."); Stifel v. Hopkins, 477 F.2d 1116,

1122 (6th Cir. 1973) (presence at a military station does not

make the station serviceman's domicile because he is there

subject to superiors' orders); Ellis v. Southeast Constr.

Co., 260 F.2d 280, 281-82 (8th Cir. 1958) (same). And,

predictably, plaintiff returned home to Rhode Island

immediately after the accident.7

7. Honda argues that plaintiff's post-accident return to his
home state should not factor into our equation because "a
litigant's decision to move to the forum state after the

-25-
25

That Rhode Island was plaintiff's domicile at the

time of the accident is conceded by the parties, and is amply

supported by the record -- throughout his stay in the

military plaintiff continued to pay income tax in Rhode

Island, and, on his 1987 reenlistment papers, plaintiff

listed Rhode Island as his home. That plaintiff was stationed

at an army base in Colorado at the time of the accident was a

matter of pure chance. In fact, in his six years of service,

plaintiff had been stationed in Hawaii, Maryland, Kentucky

and Korea prior to arriving in Colorado.

Because the number of contacts claimed by each

state is equivalent, we examine the additional factors

enumerated by the Rhode Island courts, beginning with

"predictability of results." This factor militates against

the application of Colorado law. Honda, a large multi-

national corporation, cannot argue convincingly that it

expected Colorado law to apply to a case arising from a

product manufactured in Japan and involving a Rhode Island

citizen simply because the product was originally sold in

Colorado. It would be difficult for Honda to persuade us

cause of action accrued should be accorded minimal weight in
the choice-of-law analysis." Appellants' Brief at 44. As
the cases cited by Honda illustrate, see, e.g., Phillips

Petroleum Co. v. Shutts, 472 U.S. 797, 820 (1985); Reich v.

Purcell, 432 P.2d 727, 730 (Cal. 1967), this general rule was

adopted in order to discourage forum shopping. Where, as is
the case here, there is not the slightest hint of forum
shopping, plaintiff's return to Rhode Island should not be
ignored.

-26-
26

that it molded its behavior in reliance on Colorado's damages

law, particularly where that law was not enacted until four

years after the subject ATV was thrust into the stream of

commerce. See Roy v. Star Chopper Co., 584 F.2d 1124, 1129

(1st Cir. 1978), cert. denied, 440 U.S. 916 (1979). Honda

certainly did not purchase liability insurance based on its

potential exposure under a nonexistent Colorado law. See

Turcotte v. Ford Motor Co., 494 F.2d 173, 178 n.6 (1st Cir.

1974). Honda can neither claim nor rely on a vested right to

limited exposure for non-economic damages under Colorado law.

Jaurequi, 986 F.2d at 186. Consequently, Honda's justified

expectations would not be upset by the application of Rhode

Island law.

We turn to the next factor: maintenance of inter-

state order. "`Interstate order is served when application

of one state's law offends no law or policy of the other

state.'" Roy, 584 F.2d at 1129 (quoting Turcotte, 494 F.2d

at 178). To perform this analysis, we must identify the

purposes or policies which underlie each state's rule of law,

and the degree to which the purposes underlying each rule

would be furthered by the rule's application. Inevitably,

this analysis subsumes the fourth factor delineated by the

Rhode Island courts: "advancement of the forum's

governmental interests."

-27-
27

Colorado has little governmental interest in

limiting the amount of damages for pain and suffering

available to plaintiff in the present litigation. The

Colorado statute limiting the amount of damages for pain and

suffering in civil actions, Colo. Rev. Stat. 13-21-102.5,

reflects an economic policy consideration. According to the

Colorado Supreme Court, "[i]t is clear from the legislative

history of section 13-21-102.5 . . . that the primary goal of

the legislature was to increase the affordability and

availability of insurance by making the risk of insured

entities more predictable." General Elec. Co. v. Niemet, 866

P.2d 1361, 1364 (Colo. 1994). Thus, the goal of Colorado's

legislature was:

to improve the predictability of risks
faced by insurance companies. If an
insurance company can predict risks with
reasonable accuracy, then it can also
predict its losses and profits. The
concern of an insurance company is the
risk associated with insuring each
individual insured, not with denying an
injured person damages that may be paid
by another insurance company or person.

Id. at 1365. The crucial question, then, is whether, on the

facts of this particular case, Colorado's policy will be

advanced by the application of its damages cap.

We can see no reason why the Colorado legislature

would be concerned with the affordability of insurance to a

multinational Japanese corporation or its wholly-owned

subsidiary, a California corporation. Honda sells its cars,

-28-
28

motorcycles and recreational vehicles in all fifty states,

and Colorado's damages law plays, at best, an insignificant

role in setting Honda's insurance rates. In fact, there is

no evidence in the record that Honda has ceased doing

business in any state because of a failure by that state to

limit the amount of damages a plaintiff may recover in a

civil action.

Rhode Island courts, on the other hand, have

repeatedly stressed that a plaintiff should be fully

compensated for his personal injuries, including pain and

suffering. See, e.g., Hayhurst v. LaFlamme, 441 A.2d 544,

548-49 (R.I. 1982); Kelaghan v. Roberts, 433 A.2d 226, 230

(R.I. 1981). Domiciliary states have a strong interest in

the welfare of their plaintiffs, and in seeing that their

plaintiffs are adequately compensated for their injuries.

See In re Air Crash Disaster Near Chicago, 644 F.2d 594, 612-

13 (7th Cir.), cert. denied, 454 U.S. 878 (1981); Burgio v.

McDonnell Douglas, Inc., 747 F. Supp. 865, 872 (S.D.N.Y.

1990) ("Where courts have applied the law of the place of

injury, the issue has often been liability as opposed to

[compensatory] damages." (citing cases)). This interest is

best served by applying the law of the plaintiff's domicile

to the measure of compensatory damages. In re Air Crash

Disaster, 644 F.2d at 613. In the instant case, Rhode

-29-
29

Island's interest would be frustrated rather than advanced

were Colorado law applied.

The interests of simplification of the judicial

task and application of the better rule of law do not weigh

heavily in either state's direction. As to the former, we

cannot see how the judicial task would be more or less

simplified by application of one rule as opposed to the

other. As for the latter, the Rhode Island Supreme Court

would undoubtedly favor a compensatory damage standard

without limits. We are confident that a Rhode Island court

faced with this choice-of- law dilemma would apply its own

law. The district court, it follows, acted properly in

applying Rhode Island law.

E. Prejudgment Interest

Honda argues that prejudgment interest should not

be assessed on future damages, or on damages awarded for pain

and suffering. A brief foray into Rhode Island law evidences

the futility of Honda's arguments.8

In arguing that the trial court erred in applying

Rhode Island's prejudgment interest statute to future

damages, Honda maintains that "interest" is simply

8. In light of our determination that a Rhode Island court
would apply its own law to the issue of compensatory damages,
so too would it apply its own prejudgment interest statute.
See Johnson v. Continental Airlines Corp., 964 F.2d 1059,

1064-64 (10th Cir. 1992) (law governing compensatory damages
should govern prejudgment interest).

-30-
30

compensation for the loss of use of money, and that, "[i]n

light of the common understanding of the term, only Humpty

Dumpty would be brazen enough to assert that interest

encompasses monies paid to compensate for the time-value of

money that has not yet been expended. See L. Carroll, Alice's

Adventures in Wonderland & Through the Looking-Glass 186

(Signet Classic 1960)." Appellants' Brief at 52. This

argument, while colorful, is substantively wrong.

The Rhode Island prejudgment interest statute

provides, in pertinent part:

In any civil action in which a verdict is
rendered or a decision made for pecuniary
damages, there shall be added by the
clerk of the court to the amount of
damages, interest at the rate of twelve
percent (12%) per annum thereon from the
date the cause of action accrued which
shall be included in the judgment entered
therein.

R.I. Gen. Laws 9-21-10 (Supp. 1993). The Rhode Island

Supreme Court has frequently pointed out that "the

Legislature's primary intention [in enacting the prejudgment

interest statute] was not to add interest but to establish a

device to encourage settlements of cases sounding in tort

without undue delay." DiMeo v. Philbin, 502 A.2d 825, 826

(R.I. 1986) (citing cases); see also Pray v. Narrangansett

Imp. Co., 434 A.2d 923, 930 (R.I. 1981); Roy, 584 F.2d at

1135; cf. Rhode Island Turnpike & Bridge Auth. v. Bethlehem

Steel Corp., 446 A.2d 752, 757 (R.I.) (noting that statute

-31-
31

serves two purposes, promotion of early settlements and

compensation for the loss of use of money), appeal dismissed,

459 U.S. 938 (1982); Murphy v. United Steelworkers of Amer.,

507 A.2d 1342, 1346 (R.I. 1986) (same).

In Pray, the court held that 9-21-10 applies to

damages awarded in wrongful death actions, even though a

jury's verdict in a wrongful death action includes a

prediction of what the decedent would have earned in the

future, discounted to present value. Pray, 434 A.2d at 930.

The court acknowledged that simultaneous application of the

prejudgment interest and wrongful death statutes would "allow

interest to accrue upon interest as well as upon an award,"

but observed that this would not frustrate the purpose of the

prejudgment interest statute, namely, promotion of early

settlements. Id. at 930. Moreover, the court held that, due

to the mandatory nature of the prejudgment interest statute,

the trial judge would have had no authority to prevent the

addition of interest to future damages:

"In our opinion the statute is neither
ambiguous nor equivocal. It speaks
imperatively and directly not to the
court but to the clerk who is ordered to
add `to the amount of damages, interest
thereon . . . .' This is a purely
ministerial act; it contemplates no
judicial intervention. The legislative
fiat is explicit and admits of no
conditions or reservations. The claim
for damages having been duly reduced to
judgment the addition of interest is
peremptory."

-32-
32

Pray, 434 A.2d at 931 (quoting Kastal v. Hickory House, Inc.,

187 A.2d 262, 264 (R.I. 1963)).

The court further noted that, had it wanted to,

the legislature could have excluded wrongful death actions

from the ambit of the prejudgment interest statute, but chose

not to:

"In the face of a statute so clear
and unambiguous there is no room for the
application of the usual canons of
statutory construction. In such a case
the statute declares itself. We may not
where no ambiguity exists search beyond
the statute for a different meaning.
Even hardship does not justify a court in
reading into a statute something contrary
to its unequivocal language. Only when
the legislature sounds an uncertain
trumpet may the court move in to clarify
the call. But when the call is clear and
certain as it is here we may not consider
whether the statute as written comports
with our ideas of justice, expediency or
sound public policy. In such
circumstances that is not the court's
business."

Id. at 931 (quoting Kastal, 187 A.2d at 264-65).

While it has provided us with a literary allusion,

Honda has chosen to ignore both the primary purpose of the

Rhode Island prejudgment interest statute, and binding

precedent that firmly establishes that the statute, which

does not distinguish between past and future damages, means

what it says, and says what it means. It follows that

prejudgment interest was properly assessed on all future

damages awarded to plaintiff.

-33-
33

Honda also argues that damages for "pain and

suffering" are not "pecuniary," and are therefore beyond the

scope of the prejudgment interest statute. Like bumper-to-

bumper traffic, this argument goes nowhere.

Section 9-21-10 calls for the imposition of

interest in any "civil action" in which a verdict or decision

awards "pecuniary damages." In construing the statute, the

Rhode Island Supreme Court has explained "that the

Legislature, in employing the term 'pecuniary,' was using it

as a synonym for compensatory." Murphy, 507 A.2d at 1346.

Because awards of punitive and nominal damages are

not designed to compensate a plaintiff, they fall outside the

reach of the prejudgment interest statute. Id.; DeLeo v.

Anthony A. Nunes, Inc., 546 A.2d 1344, 1348 (R.I. 1988),

cert. denied and appeal dismissed, 489 U.S. 1074 (1989). On

the other hand, the Rhode Island Supreme Court has

consistently held that damages for pain and suffering are "in

the nature of compensatory damages." Trainor v. Town of

North Kingstown, 625 A.2d 1349, 1350 (R.I. 1993) (citing

cases). This is so even though "`no particular formula or

rule of thumb is available either to a jury or to [a] court

for computing the damages which are due to a plaintiff for

pain and suffering.'" Hayhurst, 441 A.2d at 547 (quoting

Worsley v. Corcelli, 377 A.2d 215, 217 (R.I. 1977)). We are

led inexorably to the conclusion that Rhode Island's

-34-
34

prejudgment interest statute encompasses damages awarded for

pain and suffering.

F. Plaintiff's Cross-Appeal

Plaintiff's claim for punitive damages was tried

subsequent to the issues of liability and compensatory

damages. At the close of plaintiff's case on punitive

damages, the district court granted Honda's motion for

judgment as a matter of law under Fed. R. Civ. P. 50(a).

Plaintiff appeals this ruling.

We exercise plenary review over the district

court's grant of a motion for judgment as a matter of law,

and apply the same standard as applied below. See Cook v.

State of Rhode Island Dep't of Mental Health, Retardation,

and Hosp., 10 F.3d 17, 21 (1st Cir. 1993). Such a motion

should be granted if, viewing the evidence in a light most

favorable to the nonmovant, no jury could properly decide in

that party's favor. Id. We cannot assess the weight of

conflicting evidence or pass on the credibility of witnesses.

Id. It is undisputed that the district court's examination

of the evidence here diligently followed this standard.

We turn to Rhode Island law for the lens through

which we must view the evidence. The Rhode Island Supreme

Court has recently articulated the standard governing claims

for punitive damages:

[A] party seeking an award of punitive
damages bears the burden of proving

-35-
35

evidence of such willfulness,
recklessness or wickedness on the part of
the party at fault, as amount[s] to
criminality, which for the good of
society and warning to the individual,
ought to be punished.

Soares v. Ann & Hope, Inc., 637 A.2d 339, 351 (R.I. 1994)

(internal quotation marks and citations omitted); see also

Sarkisian v. Newpaper, Inc., 512 A.2d 831, 836 (R.I. 1986)

(evidence must indicate that defendant acted maliciously and

in bad faith). It is a question of law for the trial court

to decide whether the plaintiff's proofs support an award of

punitive damages. Soares, 637 A.2d at 351. Only if that

court determines that the facts of a case warrant such an

award, should it allow the jury to decide the amount, if any,

of that award. Id.

We have conducted an exhaustive review of the

record, and are in complete agreement with the district

court's ruling. Even assuming (without deciding) that

sufficient evidence was introduced at the first phase of the

trial to support plaintiff's strict liability and negligence

claims, no reasonable juror could have found, at the close of

plaintiff's punitive damages evidence, that Honda acted

maliciously, in bad faith, or with the intent to cause harm.

See Palmisano, 624 A.2d at 318. Accordingly, the judgment

for Honda on plaintiff's claim for punitive damages must be

affirmed.

III.

-36-
36

CONCLUSION

The judgment of liability is vacated, and the case

is remanded for a new trial on all liability issues. On

retrial the district court should exclude the evidence of

Honda's profits from ATV sales, and prohibit references to

that information similar to the one made in closing argument

at the original trial.

We uphold the district court's decision to apply

Rhode Island law as to compensatory damages, and conclude

that, should plaintiff prevail on retrial, the award of

damages shall stand, and prejudgment interest should be

assessed on the entire damage award. The judgment for Honda

on plaintiff's claim for punitive damages claim is affirmed.

No costs to either party.

So ordered.

-37-
37